UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MILDRED S. THOMPSON,

               Plaintiff,

-vs-                                   Case No.  5:04-cv-522-Oc-10GRJ

RINKER MATERIALS OF FLORIDA, INC.,

               Defendant.

_____

## O R D E R

      This is a sexual discrimination action under Title VII and also an action under Florida law for tortious interference with contractual relationship. The case is before the Court on Defendant Rinker Materials of Florida, Inc.'s motion (Doc. 5) to dismiss the Plaintiff's tortious interference claim for failure to state a claim, or, alternatively, for judgment on the pleadings. The Plaintiff has responded (Doc. 6). Upon due consideration, the Defendant's motion is due to be denied.

### Background and Facts

      The following facts are alleged in the complaint and will be accepted as true. This action arises out of the employment of the Plaintiff, Mildred Thompson, with the Defendant, Rinker Materials of Florida, Inc. ("Rinker" or "the Defendant"). Rinker is engaged in the construction materials industry in Florida. From May of 1994 to April of 2003, the Plaintiff was employed as a materials transport driver for Rinker. Her job was to transport materials, mainly sand and rock, from quarries and railroad depots to Rinker plants around the state.

In June of 2002, the Defendant began to treat the Plaintiff differently than her male co-workers with respect to job opportunities and compensation. She was routinely told she was not needed for the day and sent home, only to discover that her usual jobs had been assigned to men who were less or no more qualified than she. Also, the Plaintiff was subjected to a hostile work environment, which included continuous unwelcome sexual advances and unsolicited touching. When she complained of the disparate treatment and harassment, she was retaliated against and eventually fired.

Following her termination from the Defendant, the Plaintiff was hired as a material transport driver for a company called Florida Aggregate ("Florida Ag"). As part of her duties, she was to deliver materials to various Rinker plants in central Florida. When the Defendant learned that the Plaintiff was making deliveries to its plants, it told Florida Ag that the Plaintiff was not permitted to make deliveries to its facilities and "intentionally sought" termination of the Plaintiff from Florida Ag.[1] As a result of the Defendant's intentional conduct, the Plaintiff was "denied the opportunity to continue employment with Florida Ag and thereafter was essentially forced to terminate her employment with Florida Ag and relocate."[2] The Plaintiff filed her EEOC complaint against the Defendant in February of 2004, after the alleged interference occurred.[3]

---

[1] Doc. 1, at ¶ 69.

[2] Id., at ¶ 68.

[3] Id., at ¶¶ 16 & 67.

The Plaintiff's complaint is framed in two counts: (1) sexual discrimination in violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII"); and (2) tortious interference with contractual relations. The Defendant moves to dismiss count two for failure to state a claim, or alternatively for judgment on the pleadings.[4] The Plaintiff opposes the motion and seeks leave to amend if necessary.

## Motion to Dismiss Standard

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from the facts in the light most favorable to the plaintiff.[5] In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[6] As the Supreme Court declared in <u>Conley v. Gibson</u>, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set

---

[4] The Court notes that insofar as the Defendant seeks judgment on the pleadings under Rule 12(c), the motion is procedurally improper. A party may move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The pleadings are not closed because the Defendant has not answered the complaint. <u>See</u> <u>Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). Regardless, the standard is the same under either Rule 12(c) or Rule 12(b)(6). <u>Id.</u>; <u>Burnette v. Carothers</u>, 192 F.3d 52, 45 (2d Cir. 1999) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.").

[5] <u>See, e.g.</u>, <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[6] <u>Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.</u>, 400 F.2d 465, 471 (5th Cir. 1968).

of facts in support of his claim that would entitle him to relief."[7]  Thus, if a complaint "shows that the Plaintiff is entitled to <u>any</u> relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead.[8]

"[T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low."[9] Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."[10] Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action"[11] or set out in precise detail the specific facts upon which she bases her claim.[12] The complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[13]

---

[7] <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  <u>See also</u> <u>Cook & Nichol, Inc. v. Plimsoll Club</u>, 451 F.2d 505 (5th Cir. 1971).

[8] <u>Dotschay v. Nat. Mut. Ins. Co.</u>, 246 F.2d 221 (5th Cir. 1957).

[9] <u>Quality Foods de Centro Am. S.A. v. Latin Am. Agribusiness Develop. Corp.</u>, 711 F.2d 989, 995 (11th Cir. 1983).

[10] Fed. R. Civ. P. 8(a)(2).

[11] <u>Roe v. Aware Woman Ctr. for Choice, Inc.</u>, 253 F.3d 678, 683 (11th Cir. 2001).

[12] <u>Conley</u>, 355 U.S. at 47.

[13] <u>Roe</u>, 253 F.3d at 683 (quoting <u>*In re* Plywood Antitrust Litig.</u>, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)).

## Discussion

Under Florida law, a claim for tortious interference with a business or contractual relationship requires a showing of both an intent to damage the business relationship *and* a lack of justification to take the action which caused the damage.[14]

The Plaintiff has met her burden of pleading direct or inferential allegations respecting the material elements of her claim.[15] She has adequately pled that the Defendant directly and intentionally interfered with her employment relationship when it told her employer, Florida Ag, that the Plaintiff was not permitted to make deliveries to any Rinker plant.[16] These allegations are also sufficient for the purposes of a motion to dismiss

---

[14] Smith v. Emery Air Freight Corp., 512 So. 2d 229, 230 (Fla. 3d DCA 1987).

[15] The elements of a tortious interference claim are: "(1) the existence of a contractual relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2002) (citing Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994)). Florida courts hold that "an action will lie where . . . a party tortiously interferes with a contract terminable at will." McCurdy v. Collis, 508 So. 2d 380, 383 n.6 (Fla. 1st DCA 1987). The Defendant does not contest that the Plaintiff has adequately pled that a contractual employment relation existed, that it was aware of that relationship, and that the Plaintiff suffered damages.

[16] In support of its argument to the contrary, the Defendant cites two decisions which are factually distinguishable, including this Court's decision in Mora-Gillespie v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., No. 5:99-cv-93-Oc-10C, 2000 WL 33323082 (M.D. Fla. Feb. 3, 2000) (Hodges, J.). In that case, the Court dismissed the plaintiff's intentional interference claim because, in addition to failing to allege a business relationship, the plaintiff failed to allege actions on the part of the defendants amounting to *intentional* interference. The plaintiff in that case alleged that her former employer refused to discuss the plaintiff's employment with a prospective employer and had instead angrily directed the prospective employer to speak with his attorney. The Court concluded that the plaintiff's bare allegation that the prospective employer inferred from this conduct that the plaintiff was a problematic employee, even if true, did not constitute intentional interference. In this case, conversely, it is alleged that the Defendant intentionally contacted the Plaintiff's employer and demanded that the Plaintiff not be permitted to perform her duties on the Defendant's premises.

to allege that the Defendant's conduct was unjustified, i.e., without a legitimate business purpose and motivated only by malice towards the Plaintiff for her discrimination complaints.[17]

The Defendant contends the Plaintiff has failed to state a claim for relief because the allegations in the complaint show that its conduct was justified or privileged as a matter of law. No business justification for denying the Plaintiff access to deliver materials to the Defendant's facilities is apparent on the face of the complaint. However, the Defendant nevertheless argues for dismissal because the tortious interference claim is based solely on the Defendant's exercise of its fundamental right to exclude from its property whomever it wants, regardless of its malicious purpose. The Defendant has cited no cases that support its position, and Florida courts have held that the right to exclude persons from business property alone, absent a legitimate business purpose for doing so, will not excuse intentional interference with a business relationship.

For example, in <u>McCurdy v. Collis</u>,[18] the plaintiff sued the Exxon Corporation for tortious interference with his employment as a foreman for a welding subcontractor that performed nearly all of its work at Exxon plants. The plaintiff's employer took the plaintiff off all of its Exxon jobs after Exxon expressed concerns to the employer that the plaintiff was a safety risk to its facilities and insisted that the plaintiff would not be permitted to work on Exxon's properties. Eventually the plaintiff was discharged because his employer could

---

[17] <u>See, e.g.</u>, <u>McCurdy</u>, 508 So. 2d at 383 ("It is only when malice is the *sole* basis for interference that it will be actionable." (emphasis in original)).

[18] <u>Id.</u>

find no other job for him that did not entail working at Exxon. The appellate court concluded

an issue of fact existed as to whether Exxon's decision was solely motivated by malice

towards the plaintiff because the evidence of the plaintiff's safety risk was questionable and

the decision to exclude the plaintiff was made shortly after the plaintiff won a sizeable

verdict against Exxon for injuries sustained in an industrial accident. Whether intentional

interference is justified, the court reasoned, "depends upon a balancing of the importance,

social and private, of the objective advanced by the interference against the importance of

the interest interfered with, considering all circumstances among which the methods and

means used and the relation of the parties are important."[19] Thus, while Exxon may have

had a qualified privilege to exclude the plaintiff from its premises in pursuit of its legitimate

interest in safety, that privilege could not be exercised purely out of malice.

---

[19] Id. at 384 (quoting Ins. Field Serv., Inc. v. White & White Inspection & Audit Serv., Inc., 384 So. 2d 303, 306-07 (Fla. 5th DCA 1980)). The court in McCurdy also looked to the factors listed in RESTATEMENT (SECOND) OF TORTS § 767 in determining whether an issue of fact existed as to the propriety of the interference. Section 767 reads:

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interest of the other with which the actor's conduct interferes,
> (d) the interest sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity of remoteness of the actor's conduct to the interference, and
> (g) the relations between the parties.

Similarly, in <u>Lore v. Barr</u>,[20] the plaintiff sued Winn Dixie for tortious interference with his employment as a beverage sales person when Winn Dixie told the plaintiff's employer that it did not want the plaintiff to service its stores. The plaintiff had previously been an employee of Winn Dixie, and Winn Dixie suspected the plaintiff of stealing a large sum of money from it just before leaving its employ. As a result of Winn Dixie's actions the plaintiff's employer removed Winn Dixie stores from the plaintiff's sales territory, drying up a significant portion of the plaintiff's sales commissions and effectively forcing the plaintiff to terminate his employment. The appellate court concluded an issue of fact existed as to whether Winn Dixie's actions were actually motivated solely by malice towards the plaintiff.

These cases stand for the proposition that although a business may enjoy a qualified privilege to exclude a person from its premises, it may not exercise that privilege solely with the malicious purpose of interfering with that person's business relationship.[21] Nothing in the complaint suggests that the Defendant had any legitimate reason, such as safety concerns, to exclude the Plaintiff. Thus, the Defendant has identified no basis for dismissal of this claim.

---

[20] 771 So. 2d 589 (Fla. 1st DCA 2000).

[21] For examples of Florida cases holding as a matter of law that a defendant's decision to exclude a party from its business premises was justified *see* <u>Smith v. Emery Air Freight Corp.</u>, 512 So. 2d 229, 230 (Fla. 3d DCA 1987) (concluding that the defendant's decision to exclude the plaintiff, an employee of its independent contractor, from entering its business premises was justified because it was motivated by the legitimate purpose of preventing future altercations between the plaintiff and the defendant's workers and stating, "A business has the right to bar a person from its premises when such action is based on a founded safety concern.") and <u>Fla. Power & Light Co. v. Fleitas</u>, 488 So. 2d 148 (Fla. 3d DCA 1986) (concluding that the defendant was privileged to bar the plaintiff, an employee of its subcontractor, from the premises of its nuclear power plant on a founded suspicion of illegal drug use).

## Conclusion

Accordingly, upon due consideration and for the forgoing reasons, it is ordered that the Defendant's motion to dismiss (Doc. 5) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 26th day of April, 2005.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy